Mr. Justice McLEAN.
I dissent, from the opinion of the court, and, as this is a constitutional question, I will state the reasons of my dissent.
The defendant in the State court was indicted and convicted of passing u a certain piece of false, base, counterfeit coin, forged and counterfeited to the likeness and similitude of the good and legal silver coin, currently passing in the State of Ohio, called a dollar.” This is made an offence by the law of Ohio, and punished by imprisonment in the penitentiary, and being kept at hard labor, not more than fifteen, nor less than three years. The defendant was sentenced- to imprisonment at hard labor for three years.
The act. of Congress of the 3d of March, 1825, punishes the-same offence, “ by a fine not exceeding five thousand dollars, and by imprisonment and confinement to hard labor not exceeding ten years.”
The.eighth article of the constitution, gives power to Congress “ to coin money, regulate the value thereof, and bf foreign coin.” Also, u to provide for the punishment of counterfeiting the securities and current coin of the United States.”
Jurisdiction is taken in this -case, on the ground that the law under which the defendant in the State court Was sentenced, is repugnant *436 to the constitution of the United States, and the above-cited act of Congress.
Objection is made to, the sufficiency of the description of the counterfeit coin alleged to-have been passed. But I think the indictment, although not technical in • this averment, is maintainable.. The false coin is alleged tó be of the similitude “ of the good and legal silver coin, currently passing in the State of Ohio, called a, dollar.” The words “legal,” “currently passing,” and “ dollar,’? are significant, and must be held-to be the coin made legal and current by act of Congress, and that the denomination- of a dollar, so connected, is a coin legal and current.
The power to “ coin money, regulate the value thereof and of foreign coin,” vested by the constitution in the federal government, is an exclusive - power. -It is expressly inhibited to the States. And the power to punish for counterfeiting the coin is also expressly vested in Congress; . This power is not inhibited to the States in terms, but this may inferred from the nature of the power. Two governments acting independently of each other cannot exercise the same power for the same object. It would be a contradiction in terms to say, for instance, that the federal government may -coin money and regulate its value, and that the same thing may -be done by the State governments. Two governments, might act- on these subjects, if.uniformity in the coin and its value were not indispensable. There can be no independent action without a freedom of the will, and in this view how can two governments do the same thing, hot a similar thing ? The coin must be the same and the value the same ; the regulation must be- the result of the same discretion, and not of distinct and independent judgments. This power, therefore, cannot be exercised by two governments.
The act of Congress of the 3d of March, 1825, “ more effectually to provide for the punishment of certain crimes against the United States,” &c., provides, by the twenty-sixth section, that “nothing in.that act shall be construed to deprive the courts of the individual States of jurisdiction, under the laws of the several States, over offences made punishable by that act.”
Offences are made punishable in hhat act committed on the high seas, in navy-yards, and other places where the United States have exclusive jurisdiction, and also for counterfeiting the coin' of the United States. Now it must be admitted that Congress cannot cede any portion of that jurisdiction which the constitution has, vested in the federal government.- And it is equally obvious, that a State cannot punish Offences committed on the high seas, or in any place beyond its limits. The above section, therefore, cannot extend to offences without the State,.nor to State statutes subsequently enacted. It is a settled rule of construction, that the statutes of a State subsequently enacted must be.expressly adopted by Congress. The statute under which the defendant below was *437 indicted was passed the 7th of March, 1835, so that no force could be given to it by the act of Congress of 1825.
That Congress have power to provide for the punishment of this offence seems tcf admit of no doubt. • Coin is the .creation of the federal government; and the power to punish the counterfeiting of this coin is expressly given in the constitution. And these powers must be incomplete, and in a great degree inoperative, unless Congress can also exercise the power to punish the passing of counterfeit coin. Such a power has been exercised by the federal government for many years, and its constitutionality has never been questioned.
Counterfeiting the notes of the Bank of the United States was made an offence by Congress, and punishments were inflicted under that law. -This power was never doubted by any one who believed' that Congress had power to establish a national- bank. ' It seemed tobe the necessary result of the power to establish the hank. For the principal power was in a great degree a nullity, unless Congress had power to protect that which' they had created. I speak not of the power to establish the bank, but of the power which necessarily resulted from the exercise of that power. And if this power to protect the notes of the bank was necessary, the power to protect the coin is still clearer, as there can be no question as to the constitutionality of the act of Congress to establish the coin and punish the act of counterfeiting it. In relation to the bank, the principal power is doubted by many, but in relation to the coinage there can be no doubt. The protection of the coin was at least as necessary as the protection of the notes of the bank. "But it cannot be necessary further to illustrate the power of Congress to punish the passing of counterfeit coin. It is a power which seems never to have been doubted.
Under the power £C to establish post-oflices and post-roads,” Congress have provided for punishing violations of the mail, regulated the duties.of the agents of the post-office department, required, under heavy penalties, ferry-keepers to pass over the mail without delay, &c. These and numerous other regulations are necessary to carry out the principal power. And so in relation to the coins. -Is it reasonable to suppose that Congress, having power to coin money, and to punish for counterfeiting the coin, should have no power to punish for passing counterfeit coin ? Is this coin created by the federal government, and thrown'upon the community, without power to prevent a fraudulent use of it ? The powers of the general government were not delegated in this manner. Where a principal power is-clearly delegated, it includes all powers necessary to give effect to the principal power. This is not controverted, it is believed, by any one. It would seem, therefore, that the power to punish for passing counterfeit coin is clearly in the federal govern» ment.
*438 Can this same power be exercised by a State. I tbink it cannot. Formerly Congress provided that the State courts should have jurisdiction of certain offences under their laws, and in several States indictments were prosecuted, and to a limited extent the laws of the Union were enforced by the States. But ■ some States very properly refused to exercise the jurisdiction in sucfh cases, and it was too clear for argument that Congress could not impose such duties on State .courts. And this doctrine is now universally established. Consequently no State court will undertake to' enforce the criminal law of the Union, except as regards the arrest of persons charged under such law.- It is therefore clear, that the same power cannot be exercised by a State court as is exercised by the courts of the United States, in giving effect to their criminal laws.
In some cases the acts of Congress adopt the laws of the States on particular subjects ; but even these, so far as the United States are concerned, become their laws by adoption, as fully as if they had been originated by them, and cannot be considered in any different light than as if they had been so passed.
If a State punish acts which are made penal by an act of Congress, the power cannot be derived from the act of Congress, but from the laws of the State. And in this'light must the act of Ohi.o be considered, under which the defendant below was- punished.
The act of. Ohio does not prescribe the same punishment for passing counterfeit coin as the act of Congress. This State law must stand upon the-power'of the State to punish an act over which the law of Congress extends and punishes. The passage of counterfeit coin is said to be a fraud which the State may punish.
With the same propriety, it is supposed that a State may punish for larceny a person who steals money from the mail or a post-office. And yet a jurisdiction over this offence, it is believed, has not been exercised by a State.
The postmaster or the carrier, as the case may be,- has a temporary possession of letters, but the money abstracted from, a letter in the mail or in the post-office may be laid in the owner, who, in contemplation of law, retains the right of property until the money shall be received by the person to whom it is forwarded.
Many, if not all, of the States punish for counterfeiting .the coin of the United States, while the same offence-is punished by act of Congress. And, as before stated, the constitution vests this power expressly in .Congress. Now in these two cases, viz. counterfeiting the coin, and passing counterfeit coin, the same act is punished by the federal and State governments. Each government has defined the crime and affixed the punishment, without reference to the action of any other jurisdiction. And the question arises whether, in such eases, where the federal government has an undoubted jurisdiction, a State government can punish the same-act. The point is. not *439 whether a State may not punish an offence under an act of Congress, but whether the State may inflict, by virtue of its'own sovereignty, punishment for the. same act, as an offence against the State, which the federa} government may constitutionally punish.
If this be so, it is a great defect in our. system. For the punishment under the State law would be no bar to a prosecution under the law of Congress. And to punish the same act' by the two governments would violate, not only the common principles of humanity, but would be repugiiant to the nature of both governments; If there were a concurrent power in both governments to punish the same act, a conviction under the laws of either could be pleaded in bar to a prosecution by the other. But it is not pretended that the conviction of Malinda FoX, under the State law, is a bar to a prosecution under the law of Congress. Each government, in prescribing the punishment, - was governed by the nature of the offence, and must be supposed to have acted in reference to its own sovereignty.
There is no principle bettér established by the common law, none more fully recognized in the federal and State constitutions, than that an individual shall not be put in jeopardy twice for the same offence. This, it is true, applies to the respective governments ; but its spirit applies with equal force against a double-.punishment, for the same act, by a State and the federáT government.
Mr. Hamilton, in the thirty-second number of The Federalist, says there is an exclusive delegation of power by the States to the federal government in three cases : — 1.. Where in express terms an exclusive authority is granted-j 2. Where the power granted is inhibited to the States ; and 3. Where the exercise of an authority granted to the Union by a State would be “ contradictory and repugnant.”
The power in Congress to punish for counterfeiting the coin, and also for passing it, is exercised under the third head. That a State should punish for doing that which an act of Congress punishes, is contradictory and repugnant. This is clearly the case,-whether we regard the nature of the power or the infliction of the punishment. As well might a State punish for treason against the United States, as for the offence of passing counterfeit coin. No government could exist without the power to punish rebellion against its sovereignty. Nor can a government protect the coin which it creates, unless it has power to'punish for counterfeiting or passing it. If it has not power to protect the constitutional currency which it establishes, it is the only exception in the exercise of' federal powers.
There can be no greater mistake than to- suppose that the federal government, in carrying out any of its supreme functions, is made dependent on the State governments. The federal is a limited government, exercising enumerated powers ; but the powers given are *440 supreme and independent. If this were not the case,, if could not be called a general government. Nothing can be more repugnant or contradictory than two punishments for the same act. It would, be a mockery of justice and a reproach to civilization. It would bring our system of government into merited contempt. The. sixth article of the constitution preserves the government from so great, a reproach. It declares, that “ this constitution, and the laws of the United States made in pursuance thereof, &c., shall be the.supreme law of the land ; and the judges in every State shall be bound thereby; any thing in the constitution- or laws of any State to the contrary notwithstanding.” That the act of Congress which punishes the passing of counterfeit coin is constitutional, would seem to admit of no doubt. • And if that act be constitutional, it is the supreme law of the land ; and any State law which is repugnant to it is void. As there'cannot, in the nature of things, be two punishments for the- same act, it follows that the power to punish being in the general government, it does not exist in the States. ■ Such a power in a State is repugnant in its existence and in its exercise to the federal power. They-cannot both standi
I stand alone in this view, but I have tiie satisfaction to know, that the lamented Justice Story, when this case was discussed by the judges the last term that he attended the Supreme Court, and, if I mistake not, one of the last cases which was discussed by him in consultation, coincided with the views here presented. But at that time; on account of the diversity of opinion' among the judges present, and the absence of others, a majority of them being required by a rule of the court, in constitutional questions, to make a decision, a reargument of the cause was ordered. I think the judgment of the State court should be reversed.

Order.

This cause came on to be heard on the transcript of the record from the Supreme Court of the State of Ohio, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Supreme Court of the State of Ohio, affirming that of the Court of Common Pleas, in this cause be and tb¿ same is hereby in all things affirmed, with costs.